**Joe JACKSON and Ruby Jackson, Plaintiffs,**

v.

**C.O. Thomas JOHNSON and Glenn S. Goord, Commissioner of Correctional Services, Respondent.**

**No. 97 Civ. 1592(LAK).**

United States District Court, S.D. New York.

July 23, 1998.

See also, 985 F.Supp. 422.

Joe Jackson, Alden, NY, pro se.

Ruby Jackson, New York City, pro se.

Richard J. Cardinale, Assistant Attorney General, Dennis C. Vacco, Attorney General of the State of New York, New York City, for Respondent.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff *pro se* Joe Jackson, a New York inmate, brings this action pursuant to 42 U.S.C. § 1983 seeking monetary and injunctive relief stemming from allegedly false disciplinary charges brought against him and his subsequent transfers to various prisons, both of which Jackson contends the defendant corrections officers precipitated in retaliation for Jackson's constitutionally protected activities. Jackson's wife, plaintiff Ruby Jackson, alleges psychological and economic damage resulting from her husband's transfers. Before the Court is the defendants' summary judgment motion. For the reasons that follow, the defendants' motion for summary judgment is granted in part and denied in part.

### *Facts*

In January 1996, while incarcerated at Fishkill Correctional Facility ("Fishkill"), Jackson requested to be placed in protective custody to "avoid possible problems" with other inmates. At a meeting with prison officials to assess Jackson's need for protective custody, defendant Johnson allegedly pre-

sented him with a list of fellow inmates' names and asked him to implicate the inmates as his harassers. Jackson refused. The next day, Jackson was placed in protective custody. While escorting him to the unit, Johnson allegedly threatened Jackson for refusing to implicate one of the inmates.

A few hours after Jackson arrived in protective custody, Johnson was assigned to pack up Jackson's personal belongings from his open cube located in a dorm for approximately 60 inmates. While thus engaged, Johnson allegedly found in Jackson's cubicle a razor "that had the end and guards broken off exposing the blade." [1] After determining that the razor could be used as a weapon, Johnson issued a misbehavior report which charged Jackson with violating prison regulations.[2]

A Tier III disciplinary hearing was held on the charge in the misbehavior report. Jackson was found guilty and sentenced to 99 days of "keeplock" and loss of privileges. Jackson alleges that, also as a result of the guilty finding, he was "hit at the parole board with two additional years" and denied his "property," "legal materials," and "access to the law library." [3] Jackson contends, moreover, that he was forbidden "access to vocational, educational, recreational and rehabilitative therapy, and programs," restrictions were placed on his exercise, he was confined to a cell for 24 hours a day for more than 150 days, and "he was forced to wear the same one set of state greens, day after day, week after week, being unable to wash them because he had nothing to change into." [4] Jackson's efforts to appeal the disciplinary charge were unsuccessful. His prison administrative appeals were denied, and his Article 78 proceeding was dismissed for failure to timely serve the petition.[5]

Jackson then filed this action under 42 U.S.C. § 1983. The Court understands this *pro se* litigant to allege that he was denied due process of law because (1) the razor was planted in his belongings and the charges fabricated in retaliation for his refusal to implicate his fellow inmates, (2) the evidence introduced against him was "tainted" in that the defendants did not follow a DOCS directive in regard to the search and, in any case, the only evidence introduced at the hearing was a photocopy of the razor rather than the razor itself, and (3) because his appointed assistant refused to help him prepare a defense. Jackson alleges that the defendants retaliated against him also by transferring him to various prisons.

The defendants move for summary judgment. The Magistrate Judge to whom the case was referred recommended granting summary judgment, and Jackson objects to the report and recommendation.

It should be noted that Jackson's complaint raised also a number of allegations concerning his treatment while incarcerated at Attica Correctional Facility ("Attica"), and in later submissions Jackson contended that he was mistreated also while at Auburn Correctional Facility ("Auburn"). By Order of June 12, 1997, this Court severed Jackson's claims regarding the period during which he was incarcerated at Attica and transferred those claims to the Western District of New York where Attica is located. The Court at that time made clear also that any claims Jackson intended to raise regarding his treatment while at Auburn were to be addressed to the Northern District of New York. Jackson, however, has reasserted before this Court several of his grievances concerning Attica and Auburn and has made other complaints without specifying where the offending conduct occurred. In passing

---

1. Johnson Decl. Ex. A.

2. Jackson was charged with violation of Rule 113.10 which states that "[i]nmates shall not make, possess, sell or exchange any item of contraband that may be classified as a weapon by description, use or appearance." Johnson Aff. ¶ 4 & Ex. A.

3. Jackson 56.1 Stmt. at 6.

4. Jackson Mar. 31, 1998 Declaration/Affidavit Response to Order of Judge Peck (hereinafter "Jackson Decl.") at 3–4.

5. Jackson alleges that the Department of Correctional Services intentionally hindered and hampered his efforts to timely serve the Article 78 petition by constantly transferring him from facility to facility. Jackson 56.1 Stmt. at 7.

on this motion, the Court has assumed, as it must, that all conduct not specifically stated to have occurred at Attica or Auburn took place at Fishkill.

*Discussion*

*Due Process Challenge to the Disciplinary Hearing*

The defendants' motion for summary judgment on Jackson's due process challenge to the prison disciplinary hearing relies on four grounds: (1) that Jackson has failed to demonstrate that his confinement posed an "atypical and significant hardship" as required by *Sandin v. Conner*,[6] (2) that *Edwards v. Balisok*[7] bars Jackson's claim, (3) that Jackson did not demonstrate that the procedures employed at the disciplinary hearing fell short of those required in *Wolff v. McDonnell*[8] and finally, (4) that the defendants are entitled to qualified immunity.

*Sandin v. Conner*

█ The logical starting point for analysis is the defendants' belated argument[9] that they are entitled to summary judgement on the ground that Jackson failed to allege "any facts to suggest that the duration or conditions of his segregated confinement amounted to an atypical and significant hardship" as required by the Supreme Court's decision in *Sandin v. Conner*.[10]

To establish a due process violation "it is necessary to prove that the state has created a protected liberty interest and that the process due was denied."[11] The Supreme Court in *Sandin v. Conner* considered whether prisoners have protected liberty interests in prison disciplinary proceedings such that

they are entitled to due process in those hearings. The Court found that, although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[12]

Following *Sandin*, the Second Circuit articulated a two-part test governing due process challenges to prison disciplinary proceedings. "To prevail, [the plaintiff] must establish both that the confinement or restraint creates an 'atypical and significant hardship' under Sandin, and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint."[13] Factors bearing on the "atypical and significant hardship" inquiry include: (1) the effect of disciplinary action on the length of prison confinement, (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement.[14]

The Second Circuit repeatedly has made clear that district courts are to undertake extensive fact-finding in assessing whether a liberty interest has been affected, including determinations regarding both the length

---

6. 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

7. 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

8. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

9. The defendants did not raise the *Sandin v. Conner* argument until after their summary judgment motion had been fully briefed and only did so then after being ordered to address the point by the Magistrate Judge. *See* Order of Feb. 5, 1998.

10. 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

11. *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998) (citing *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

12. *Sandin,* 515 U.S. at 483–84, 115 S.Ct. 2293 (1995) (citations omitted).

13. *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

14. *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293.

and the circumstances of the confinement.[15] It has cautioned district courts to remain cognizant also of their duty on summary judgment to take the non-moving party's allegations as true and draw all permissible factual inferences in favor of that party.[16] In *Wright v. Coughlin,* for example, the Second Circuit reversed a lower court's grant of summary judgment because the court had impermissibly credited a prison official's assertion that the plaintiff's confinement had not been atypical or significant and ignored the plaintiff's allegations that he was denied access to certain programs to which administratively confined prisoners were permitted access and deprived of personal belongings (including clothing), sufficient food, opportunities for work, programming, and recreation, numerous privileges (including telephone usage, receipt of packages, and conjugal visits), and access to the law library.[17] Summary judgment was improper, according to the Circuit, because the district court in substance had resolved issues of fact by crediting the prison officials.[18]

In this case, the defendants rely entirely on the length of Jackson's confinement for their argument that the punishment was not "atypical and significant." [19] The defendants have submitted no evidence, however, regarding the conditions of Jackson's confinement. Jackson, on the other hand, alleges in his sworn statements that, in addition to his 99 days of "keeplock" and loss of privileges, he was "hit at the parole board with two additional years" and denied his "property," "legal materials," and "access to the law library," [20] forbidden "access to vocational, educational, recreational and rehabilitative therapy, and programs," restricted in his exercise, confined to a cell for 24 hours a day for more than 150 days, and "forced to wear the same one set of state greens, day after day, week after week, being unable to wash them because he had nothing to change into." [21] The defendants do not challenge these assertions.

Bearing in mind that defendants move for summary judgment and that the burden therefore rests with the defendants to establish the absence of a genuine issue of material fact, the Court finds that defendants have failed to sustain their burden. In the face of Jackson's sworn statement regarding the conditions of his confinement, the defendants failed to adduce any evidence that these conditions were not an "atypical and significant hardship" in comparison to the condition of other prisoners. Consequently, it would be improper to grant the defendants summary judgment on that ground.[22]

*Edwards v. Balisok*

---

**15.** *See Brooks v. DiFasi,* 112 F.3d 46 (2d Cir. 1997) (remanding for findings on the length of the disciplinary confinement, the restrictiveness of keeplock, and the prevailing conditions in administrative confinement and in the prison at large); *Miller v. Selsky,* 111 F.3d 7 (2d Cir.1997) (same); *Sealey v. Giltner,* 116 F.3d 47, 51–52 (2d Cir.1997) (remanding for specific findings on conditions of confinement); *Frazier v. Coughlin,* 81 F.3d 313 (2d Cir.1996) (affirming district court's dismissal of inmate action based on extensive fact-finding that there was no showing that the conditions of confinement were dramatically different from basic conditions of his sentence); *see also Samuels v. Mockry,* 77 F.3d 34 (2d Cir.1996); *Branham v. Meachum,* 77 F.3d 626 (2d Cir.1996). *Cf. Hynes v. Squillace,* 143 F.3d 653 (2d Cir.1998) (per curiam) ("in cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, the district court need not provide such detailed explanation of its reasoning").

**16.** *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998).

**17.** *Id.* at 138.

**18.** *Id.*

**19.** *See* Def. Ltr. of Mar. 10, 1998.

**20.** Jackson 56.1 Stmt. at 6.

**21.** Jackson Decl. at 3–4.

**22.** As the defendants have failed to demonstrate the absence of a genuine issue of material fact on the first prong of the *Frazier* test—whether the confinement was an "atypical and significant hardship"—the Court need not address whether the defendants have satisfied their burden with respect to the second prong—whether New York has created a protected liberty interest in remaining free of such a confinement, a point on

■ In *Edwards v. Balisok,*[23] the Supreme Court held that a prisoner may not challenge under Section 1983 the result of a prison disciplinary hearing that deprived the prisoner of good-time credits if success of the challenge necessarily would imply the invalidity of the hearing unless and until the results of the hearing have been overturned or vacated.[24]

Neither party has alleged or demonstrated that Jackson lost good-time credits as part of his punishment for the misbehavior charges.[25] Jackson contends, however, that he was "hit at the parole board with two additional years" because of the misbehavior report filed against him.[26] It is unclear whether the denial of parole based on misconduct is equivalent to a loss of good-time credits imposed as a consequence of a disciplinary hearing. But the Court need not decide whether it is because there is no competent evidence on the record to substantiate Jackson's assertion.[27] Jackson's Rule 56.1 statement, although sworn, does not demonstrate that he is competent to testify as to the basis for any parole board decision. His allegation that he was denied parole for an additional two years on the basis of the misbehavior report at issue therefore must be disregarded by this Court.

The issue before the Court then is whether *Edwards* bars prisoner due process challenges under Section 1983 to disciplinary hearings where the prisoner has lost no good time as a result of the hearing. In analyzing

this issue, it is important to consider *Edwards* in context.

Twenty five years ago, in *Preiser v. Rodriguez,*[28] the Supreme Court considered the availability to prisoners of Section 1983 relief based on the denial of due process at prison disciplinary proceedings. In that case, it held that a prisoner seeking to restore good time credits that had been withdrawn through allegedly unconstitutional prison disciplinary proceedings must proceed through habeas corpus rather than Section 1983. Reasoning that "attacking the very duration of [the prisoner's] physical confinement itself" due to the loss of good time credits lay "within the core of habeas corpus," the Court found that permitting a prisoner to proceed through Section 1983, rather than habeas when he had not exhausted available state remedies would "wholly frustrate" Congress's intent in providing an exhaustion requirement for habeas.[29] *Preiser* consequently refused to permit prisoner challenges via Section 1983 to "the fact or duration of [their] confinement based ... upon the alleged unconstitutionality of state administrative action."[30]

Notably, the Court limited its ruling to prisoner challenges to "the fact or duration of" prison confinement and reaffirmed that Section 1983 remains "a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."[31] Among the Court's examples of "condition of confinement" cases were *Haines v. Kerner*[32] and *Wilwording v. Swenson,*[33] both

---

which the defendants offered no argument or proof.

**23.** 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

**24.** 117 S.Ct. at 1589.

**25.** *See* Reinhardt Decl. Ex. A (printout of Jackson's disciplinary history which indicates no loss of good time imposed as a result of the razor possession charge).

**26.** *See* Jackson 56.1 Stmt. at 6.

**27.** *See Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 526 (2d Cir.1994); Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and

shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

**28.** 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

**29.** *Id.* at 487–90, 93 S.Ct. 1827.

**30.** *Id.* at 489, 93 S.Ct. 1827.

**31.** *Id.* at 498, 93 S.Ct. 1827.

**32.** 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (permitting prisoner's Section 1983 action to recover damages for injuries sustained while placed in solitary confinement as a disciplinary measure).

**33.** 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam) (allowing prisoner's habeas and Section 1983 challenge to disciplinary mea-

of which involved due process attacks on prison disciplinary hearings which had resulted in disciplinary segregation but no loss of good time credits and thus no change in the fact or duration of the prisoners' confinement to prison.[34]

Then, in *Heck v. Humphrey*,[35] the Supreme Court considered a claim for damages under Section 1983 by a prisoner who alleged that prosecutors and police officers had engaged in various types of misconduct in the investigation and prosecution of his case. Concluding that the plaintiff's claim implied the invalidity of his conviction, the Court held "that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[36] Central to the Court's conclusion was the notion that permitting a Section 1983 attack on a conviction that still stands would "expand opportunities for collateral attack" and might risk "the creation of two conflicting resolutions arising out of the same or identical transaction[s]."[37] Thus, the Court held, a district court initially must determine whether a Section 1983 claim for damages, if established, would "necessarily imply the invalidity of the conviction or sentence."[38] If so, the complaint must be dismissed unless the conviction or sentence already has been invalidated.[39]

Most recently, the Supreme Court in *Edwards v. Balisok*[40] applied *Heck* to a prisoner's due process challenge to the procedures of a prison disciplinary hearing which resulted in the deprivation of the prisoner's good-time credits and thus lengthened his confinement. As in *Heck*, the Supreme Court concluded that the prisoner's claims, which were based on the alleged deceit and bias on the part of the decisionmaker, if established, would "necessarily imply the invalidity of the punishment imposed"[41] and held that the claim was "not cognizable under § 1983."[42]

This case differs from *Edwards* in an important respect. As noted above, plaintiff Joe Jackson does not claim that he lost good time credits as a result of the disciplinary action. Hence, the issue raised by defendants' motion is whether *Edwards* nevertheless bars this Section 1983 claim on the theory that the outcome of this case could imply the invalidity of Jackson's hearing. There is a circuit split on this point.

The District of Columbia Circuit in *Brown v. Plaut*[43] confined *Edwards* to challenges resulting in the loss of good time credits. Relying on the language of *Preiser* that Section 1983 remains "a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody,"[44] the court concluded that a disciplinary hearing that results only in administrative segregation does not affect the fact or duration of the prisoner's confinement. Accordingly, it held that a challenge to the outcome of such a hearing is cognizable under Section 1983.[45]

---

sures and living conditions while placed in maximum security).

**34.** *Preiser*, 411 U.S. at 498, 93 S.Ct. 1827.

**35.** 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

**36.** *Id.* at 486–87, 114 S.Ct. 2364.

**37.** *Id.* at 484–85, 114 S.Ct. 2364.

**38.** *Id.* at 487, 114 S.Ct. 2364.

**39.** *Id.*

**40.** 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

**41.** *Id.* 117 S.Ct. at 1589.

**42.** *Id.*

**43.** 131 F.3d 163 (D.C.Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2346, 141 L.Ed.2d 716 (1998).

**44.** *Id.* at 167 (citing *Preiser v. Rodriguez*, 411 U.S. at 499, 93 S.Ct. 1827).

**45.** 131 F.3d at 167–68; *see also Clarke v. Stalder*, 121 F.3d 222, 226 (5th Cir.1997) (*Preiser* and *Edwards* do not apply to actions in which "a favorable determination would not automatically entitle the prisoner to accelerated release.").

In contrast, the Seventh Circuit in *Stone–Bey v. Barnes* [46] held that *Edwards* bars all prisoner Section 1983 attacks, the success of which necessarily would imply the invalidity of prison disciplinary hearings, unless the result of the hearing in question previously has been overturned or vacated. The *Stone–Bey* court reasoned that "[t]he 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge." [47] In other words, the Seventh Circuit found that *Edwards* bars challenges to the "fact or duration of" the disciplinary sanctions, not simply the "fact or duration of" the prison confinement itself.

This Circuit has not yet directly considered the applicability of *Edwards* to Section 1983 claims involving no loss of good time credits. Nor do the existing indications of its view point uniformly in one direction. On the one hand, in *Black v. Coughlin*, which was decided after *Heck* but before *Edwards*, the Second Circuit considered a prisoner's claim based on an alleged denial of due process in a prison disciplinary proceeding which did not result in a loss of good time credits. It held, under *Heck*, that the claim did not accrue for statute of limitations purposes until the plaintiff succeeded in having the disciplinary ruling reversed by the state court. [48] *Black* thus implies, although it does not hold, that the Second Circuit would follow the Seventh Circuit's interpretation of *Edwards* and require a prison disciplinary hearing determination to be overturned or vacated before forming the basis of a Section 1983 suit unless the success of the Section 1983 claim would not imply the invalidity of the hearing result. On the other hand, however, this Circuit recently has permitted Section 1983 challenges to prison disciplinary hearings

which involved no loss of good-time credits and in which the underlying guilty finding had not been vacated or invalidated. [49] Thus, the issue of *Edwards'* applicability to claims involving prison disciplinary hearings which do not involve the loss of good time credits remains very much an open one in this Circuit.

This Court is persuaded that *Edwards* does not apply where the disciplinary hearing at issue has no impact on the fact or duration of the prisoner's confinement in prison. *Preiser*, which is the ultimate foundation of *Edwards*, is based on the principle that habeas corpus, not Section 1983, is the appropriate vehicle for challenging the existence or duration of confinement. [50] The *Preiser* Court reiterated that Section 1983 is available to challenge conditions of confinement, indicating by its citation to *Haines v. Kerner* that disciplinary segregation involves such conditions. [51] Both *Heck* and *Edwards* made clear also that they were concerned with challenges to the fact or duration of the prison confinement, not disciplinary segregation within the prison—*Edwards* involved prison procedures that resulted in the loss of good time credits and *Heck* concerned imprisonment based on allegedly unconstitutional prosecutorial and investigatory procedures that led to the plaintiff's imprisonment. In consequence, the Seventh Circuit's view that *Edwards* bars an action like this is not persuasive, particularly when *Edwards* is considered in its full context.

Nor would such a result be supported by the rationale of the relevant Supreme Court decisions. *Preiser* was concerned primarily with ensuring that prisoners use habeas corpus, not Section 1983, to attack the fact or

**46.** 120 F.3d 718, 721 (7th Cir.1997).

**47.** *Id.*

**48.** *See Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996).

**49.** *See Arce v. Walker*, 139 F.3d 329 (2d Cir. 1998); *Scott v. Albury*, 138 F.3d 474 (2d Cir. 1998) (per curiam); *see also Frazier v. Coughlin*, 81 F.3d 313 (2d Cir.1996); *Branham v. Meachum*, 77 F.3d 626 (2d Cir.1996); *Samuels v. Mockry*, 77 F.3d 34 (2d Cir.1996).

**50.** *See Preiser*, 411 U.S. at 486, 93 S.Ct. 1827 ("'the respondents' suits in the District Court fell squarely within this traditional scope of habeas corpus. They alleged that the deprivation of their good-conduct-time credits was causing or would cause them to be in illegal physical confinement, i.e., that once their conditional release date had passed, any further detention of them in prison was unlawful; and they sought restoration of those good-time credits, which ... meant their immediate release from physical custody.").

**51.** *See id* at 498, 93 S.Ct. 1827.

duration of their confinement or to collaterally attack their convictions because such challenges lie at the "core" of habeas corpus, the availability of which is subject to important statutory restrictions inapplicable to Section 1983.[52] It expressly refused to require use of habeas for condition of confinement cases in light of the fact that "it is arguable that habeas corpus will lie to remove the restraints making the custody illegal."[53] Thus, there is no principled reason for requiring a prisoner who is challenging the conditions of his confinement to proceed by habeas corpus rather than Section 1983. Because Jackson did not lose any good time credits and because he has not challenged the fact or duration of his confinement in prison, *Edwards v. Balisok* presents no barrier to this claim.

### Remaining Defenses

The defendants make two other cursory arguments with respect to Jackson's due process claim. First, they contend that plaintiff "does not allege any facts to suggest that any of the procedural due process protections set forth in *Wolff v. McDonnell*[54] were violated during the disciplinary hearing."[55] Second, they argue that they are entitled to qualified immunity because any liberty interest that Jackson had in remaining free from segregated confinement was not "clearly established in 1996."[56] The Court disagrees.

██ In support of his claim that he was denied due process protection, Jackson contends that tainted evidence was introduced against him in the disciplinary hearing and that he was deprived of assistance in preparing his defense. The tainted evidence argument is based on Jackson's claim that he was not present when his cell was searched, as allegedly required by a prison directive, that the razor itself was not produced at the hearing and allegedly was destroyed by the prison officials, that the only evidence introduced against him was a photocopy of the razor, and that the log books which purportedly contain an entry after the razor was found now are missing.[57] Essentially Jackson contends that the evidence against him was inherently unreliable and otherwise insufficient.

"[D]ue process requires 'that there be some evidence to support the findings made in the disciplinary hearing.'"[58] The record of the disciplinary hearing reveals that the evidence offered against Jackson included the misbehavior report filed by Johnson, a photocopy of the razor allegedly found in Jackson's belongings, the testimony of Correction Officer Marshall, and a letter by Jackson to Lieutenant Pataro.[59] The stated reason for the guilty finding was that the defendant had shown "no reason why someone would plant a weapon on him."[60] Although it is true that the actual razor appears not to have been introduced at the hearing[61] and that the log books documenting the chain of custody of the razor supposedly have been lost,[62] this Court cannot say that there was no evidence supporting the disciplinary board's finding that Jackson was guilty of the charges. The other due process claim, however, is not so easily dismissed.

---

**52.** *See id.* at 489, 93 S.Ct. 1827 ("a state prisoner's challenge to the fact or duration of his confinement, based .. upon the alleged unconstitutionality of state administrative action ... is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration.").

**53.** *Id.* at 499, 93 S.Ct. 1827.

**54.** 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

**55.** Def. Mem. 16 n. 2.

**56.** *Id.*

**57.** *See* Jackson Obj. to Report and Recommendation at 3; Jackson Decl. at 2; Jackson 56.1 Stmt. at 1, 3.

**58.** *Zavaro v. Coughlin,* 970 F.2d 1148, 1152 (2d Cir.1992) (quoting *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)).

**59.** *See* Defs.' Objs. & Resp. to Pls.' First Req. for Produc. of Docs. Ex. A.

**60.** *Id.*

**61.** *Id.*

**62.** Defs.' Objs. & Resp. to Pls.' First Req. for Produc. of Docs. Req. 1.

■ Assuming that Jackson's punishment implicated a protected liberty interest—that is, that his confinement was "atypical and significant" and that New York law had created a liberty interest in being free of such confinement[63]—he then will have to demonstrate that the procedures afforded him at the disciplinary hearing fell short of the requirements enunciated in *Wolff v. McDonnell.* Jackson's deprivation of assistance argument is based on his assertion that he requested the help of a staff assistant in preparing his defense for the disciplinary hearing but was refused.[64] *Wolff* requires, among other things, the assistance of at least a staff member or fellow inmate where the prisoner is illiterate or the issues involved complex.[65] As the defendants have not shown that neither of these conditions was present, they have failed to establish the absence of a genuine issue of fact as to whether Jackson's disciplinary hearing comported with the requirements of *Wolff.*

■ As to the qualified immunity argument, "[g]overnment officials are protected from suits against them in their individual capacity for money damages where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" [66] "A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" [67] Qualified immunity does not shield officials who "knowingly violate the law." [68]

■ Defendants' qualified immunity argument rests on the notion that the only protectible liberty interest that Jackson might have possessed was in being free of disciplinary confinement that exceeded a certain period of time. This overlooks Jackson's allegations that during his confinement, he was subjected to a myriad of deprivations above and beyond the length of the keeplock itself.[69] A prisoner's right to be free of such conditions, such as the denial of access to the courts through restrictions on typewriters or law libraries, was firmly established a number of years prior to 1996.[70] Without a more substantial showing than that currently before the Court, the defendants are not entitled to dismissal on the ground of qualified immunity at this time.

*Retaliation Claims*

In addition to challenging the procedures employed at the disciplinary hearing, Jackson claims also that the defendants retaliated against him for his request to be placed in protective custody, his refusal to implicate other inmates as his potential harassers and because of defendant Johnson's racist state of mind.[71] In particular, Jackson asserts that the filing of "false charges" against him and the decisions to transfer him to various prisons were the product of the defendants' retaliatory motives. The defendants' motion for summary judgment contends that Jackson failed to demonstrate a deprivation of his constitutional rights in that (1) the retaliation is alleged in conclusory terms, (2) the complaint fails to show that retaliation was a "substantial or motivating factor" behind the

63. *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

64. Cpt. at 2; Jackson 56.1 Stmt. at 6; *see also* Cpt. Ex. 5 (CPLR Article 78 Petition) at 2–3.

65. 418 U.S. at 570, 94 S.Ct. 2963; *see also Drayton v. McCall,* 584 F.2d 1208, 1218 n. 23 (2d Cir.1978).

66. *Diamondstone v. Macaluso,* 148 F.3d 113, 125–25, 1998 WL 327883, at *13 (2d Cir.1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

67. *Diamondstone,* 148 F.3d 113, at 125–26, 1998 WL 327883, at *13 (quoting *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998) and *Anderson*

*v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

68. *Diamondstone,* 148 F.3d 113, 125–26, 1998 WL 327883, at *13 (quoting *Catanzaro v. Weiden,* 140 F.3d 91, 96 (2d Cir.1998) and *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

69. Jackson 56.1 Stmt. at 6; Jackson Decl. at 3–4.

70. *See, e.g., Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) ("access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed").

71. Jackson 56.1 Stmt. at 3–4.

issuance of the misbehavior report, and (3) the defendants have demonstrated that the plaintiff would have been disciplined based on proper reasons alone because defendant Johnson was required by the administrative code to report any incident involving inmate misbehavior such as possession of a weapon. Additionally, the defendants argue that neither of them had personal involvement in the decision to transfer Jackson to various prisons.

Prisoners have "a right not to be subjected to false misconduct charges in retaliation for [their] exercise of a constitutional right." [72] In order to survive summary judgment, a plaintiff who claims retaliation for the exercise of a constitutional right must demonstrate both "(1) that the disciplined conduct was constitutionally protected, and (2) that his punishment was motivated, in whole or in part, by his conduct—in other words, that the prison officials' actions were substantially improper retaliation." [73] If the plaintiff meets this burden, "his claim will still not survive summary judgment ... if the defendants meet their burden of showing that there is no genuine issue as to the fact that [the plaintiff] would have received the same punishment even if they had not been improperly motivated." [74]

### Misbehavior Report

Jackson contends that he engaged in constitutionally protected behavior when he petitioned prison officials to place him in protective custody because he had reason to fear for his life from other inmates in his housing unit and when he refused to implicate a fellow inmate as one of his harassers. [75] He contends also that his request for protective custody and his refusal to implicate a certain inmate were substantial factors in Johnson's planting the razor in his belongings or writing Jackson up on the razor Johnson legitimately located in Jackson's belongings. [76]

Defendants have offered competent and undisputed proof that Officer Johnson did not place the razor in Jackson's belongings [77] and that Johnson was required by statute to report the razor as a weapon. [78] The applicable statutes require that "[e]very incident of inmate misbehavior involving danger to life, health, security or property must be reported, in writing as soon as practicable," [79] and that "[t]he misbehavior report shall be made by the employee who has observed the incident or who has ascertained the facts of the incident." [80] Because Johnson did not plant the razor and was obligated to issue a misbehavior report once he found it, the defendants have demonstrated adequately that they would have issued the misbehavior report even in the absence of a retaliatory motive. They therefore are entitled to summary judgment on this claim.

### Transfers

Jackson contends that the Department of Correctional Services retaliated against him by transferring him from Fishkill to Auburn Correctional Facility to Greenhaven and then back to Fishkill as part of an

**72.** *Harris v. Keane,* 962 F.Supp. 397, 405 (S.D.N.Y.1997); *see also Colon v. Coughlin,* 58 F.3d 865 (2d Cir.1995) (finding right to be free of retaliation for filing two previous lawsuits against correctional officers); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988) (recognizing right to be free of retaliation for cooperating with state administrative investigation of alleged incidents of inmate abuse at prison).

**73.** *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996); *see also Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

**74.** *Graham,* 89 F.3d at 80.

**75.** Jackson 56.1 Stmt. at 2.

**76.** *Id.* at 4.

**77.** *See* Johnson Decl. ¶ 5 ("Contrary to plaintiff's allegations, I did not place the weapon at issue in plaintiff's housing cube ..."). Although Jackson disputes this evidence in his Rule 56.1 Statement, his contention that Johnson may have placed the weapon in his belongings is not based on personal knowledge and therefore is incompetent to refute Johnson's declaration that he did not place the razor there.

**78.** *Id.* ¶ 2–4.

**79.** 7 N.Y.C.R.R. Ch. 5, § 251–3.1(a).

**80.** *Id.* at § 251–3.1(b).

effort to "intentionally hinder and hamper" his efforts to challenge the disciplinary hearing in an Article 78 proceeding.[81] The defendants have submitted a declaration from the Deputy Superintendent of Security for Fishkill, Robert Ercole, who reviewed plaintiff's transfer from Fishkill to Auburn and determined that (1) defendant "Goord is not involved in routine transfers such as plaintiff's 1996 transfer," and (2) "a Correction Officer, such as Thomas Johnson, lacks the authority to initiate or authorize any such transfer."[82]

Although it is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983,"[83] Ercole's declaration fails to state that Goord and Johnson were not personally involved in Jackson's transfer. While Goord may not "typically" be involved in routine transfers such as Jackson's, Ercole has not excluded the possibility that this was an atypical case—i.e., that Goord was involved in Jackson's transfer. And while Johnson lacks the authority to initiate or authorize a transfer, that is not to say that he was not personally involved in one or more of these transfer decisions. Nor does Ercole allege personal knowledge of the facts of Jackson's transfer. His declaration is premised entirely on his review of the official report of Jackson's transfer and his personal knowledge of the Department of Correctional Service's transfer rules and procedures.[84] As this fails to comply with FED. R. CIV. P. 56(e), the defendants are not entitled to summary judgment on the ground that they lacked personal involvement in the transfers.

*Remaining Claims*

▇▇▇ Jackson's *pro se* papers, read liberally, allege also that the defendants infringed upon his Eighth Amendment rights. Jackson's wife, plaintiff Ruby Jackson, claims that her rights have been violated by the transfer of her husband to a prison much further from her home. Both of these claims fail for the reasons articulated by the Magis-

trate Judge in his report and recommendation.

### Conclusion

Defendants' motion for summary judgment dismissing the complaint is granted (a) in its entirety with respect to plaintiff Ruby Jackson and (b) with respect to plaintiff Joe Jackson insofar as he complains of (i) an allegedly retaliatory misbehavior report, (ii) violations of the Eighth Amendment, and (iii) the alleged use of "tainted" evidence against him in the Tier III hearing. It is denied in all other respects. Thus, what remains of the case is Jackson's claim that he was deprived of assistance in the Tier III hearing and subjected to retaliatory transfers.

SO ORDERED.

### *REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

In this 42 U.S.C. § 1983 action, pro se plaintiff Joe Jackson ("Jackson") has sued a Corrections Officer at Fishkill Correctional Facility and the Commissioner of Correctional Services for retaliation and alleged violations of due process and cruel and unusual punishment under the Eighth Amendment, in connection with a Tier III disciplinary hearing that resulted in his confinement for 99 days in keeplock at Fishkill, and his subsequent transfer from Fishkill to Auburn Correctional Facility. Plaintiff Ruby Jackson, Joe Jackson's wife, also alleges psychological and economic problems as a result of her husband's transfer to a more remote prison.

This case has generated three prior judicial opinions, familiarity with which is assumed. *See Jackson v. Johnson*, 985 F.Supp. 422 (S.D.N.Y.1997) (denying defendants' motion to stay the action because of a then-pending criminal action against Jackson and denying plaintiffs' motion to add New York State and DOCS as defendants); *Jackson v. Johnson*, 1997 WL 397626 (S.D.N.Y.

---

**81.** Cpt. ¶ 7; Jackson 56.1 Stmt. at 7.

**82.** Ercole Decl. ¶¶ 4, 5.

**83.** *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950

F.2d 880, 885 (2d Cir.1991)); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

**84.** Ercole Decl. ¶¶ 1, 2, Ex. A.

June 16, 1997) (severing and transferring to W.D.N.Y. Jackson's claims regarding his treatment at Attica and declining to act on formally unasserted claims regarding his treatment at Auburn); *Jackson v. Johnson*, 962 F.Supp. 391 (S.D.N.Y.1997) (denying Jackson's request for a TRO restraining DOCS and inmates from injuring him and seeking a transfer to a prison closer to New York City).

Presently before the Court is defendants' summary judgment motion. Under *Sandin v. Conner* and its progeny, 99 days in keeplock during a five to fifteen year prison sentence does not create a liberty interest entitling the prisoner to constitutional due process protections. Nor is 99 days keeplock confinement sufficiently egregious to state a claim of cruel and unusual punishment under the Eighth Amendment. Corrections Officer Johnson did not retaliate against Jackson since C.O. Johnson was required by state regulations to issue Jackson the misbehavior report for possessing a weapon. Neither Joe Jackson's nor Ruby Jackson's claims that Joe Jackson was improperly transferred are cognizable since they have not alleged that defendants were personally involved in the transfer, and in any event, prison officials have broad discretion to transfer prisoners and inmates' relatives have no constitutional rights as to prison transfers. Accordingly, for the reasons set forth below, I recommend that defendants' summary judgment motion be granted.

### FACTS

On January 8, 1996, while Jackson was incarcerated in Fishkill Correctional Facility serving a five to fifteen year sentence for assault in the first degree (Jackson 3/11/98 Letter Ex. B & Cardinale 3/10/98 Letter Ex. A: Sentence Term Record), Jackson asked to be placed in protective custody to avoid problems with other prisoners. (Cplt. ¶ 1 & Ex. A2; Jackson 56.1 Stmt. at p. 2 ¶ 1.) [1] The next day, Lieutenant Eull spoke with Jackson about why he wanted to be placed in protective custody. (Cplt. ¶ 2; Jackson 56.1 Stmt. at p. 4 ¶ 2.) During the meeting, defen-

dant Correction Officer Thomas Johnson, who worked in the unit in which Jackson was housed, presented Lt. Eull with a list of inmates who C.O. Johnson said were harassing Jackson. (Cplt. ¶ 2; Jackson 56.1 Stmt. at p. 4 ¶ 2.) Jackson, however, did not agree, and refused to implicate the other inmates. (Jackson 56.1 Stmt. at p. 4 ¶ 2; Cplt. ¶¶ 3–4.) A few hours after the meeting, Lieutenant Eull ordered Jackson into protective custody. (Jackson 56.1 Stmt. at p. 4 ¶ 2; Cplt. ¶ 3.)

C.O. Johnson took Jackson to the protective custody unit. (Jackson 56.1 Stmt. at p. 4 ¶ 2; Cplt. ¶ 3.) Jackson alleges that on the way to the protective custody unit, C.O. Johnson "made threats at me, because I did not implicate a particular inmate named, N. Reed, who had grieved him (officer Johnson) previously for his racially motivated attacks against black inmate." (Jackson 56.1 Stmt. at p. 4 ¶ 2; Cplt. ¶ 3.)

Approximately three hours after Jackson was placed in protective custody, Johnson began packing up Jackson's property in order to transfer it to the protective custody housing unit. (Johnson Aff. ¶ 4; *see also* Jackson 56.1 Stmt. at p. 5; Cplt. ¶ 4; Defs.' 56.1 Stmt. ¶ 3.) Jackson's property was stored in a cube located in a dorm to which Jackson estimates 60 other inmates had access. (Johnson Aff. ¶ 4 & Ex. A; Jackson 56.1 Stmt. at p. 5; Cplt. ¶ 4 .) C.O. Johnson found hidden in a box of envelopes in Jackson's cube a state-issued razor "that had the end and guards removed exposing the blade." (Johnson Aff. ¶ 4 & Ex. A; Defs.' Rule 56.1 Stmt. ¶ 4; *see also* Jackson 56.1 Stmt. at pp. 3, 5; Cplt. ¶ 4.) C.O. Johnson determined that the damaged razor could "be used as a weapon and thus pose[d] a threat to life, health and security." (Johnson Aff. ¶ 4; Defs.' Rule 56.1 Stmt. ¶ 5.)

C.O. Johnson issued a misbehavior report charging Jackson with violating Rule 113.10, which states that " '[i]nmates shall not make, possess, sell or exchange any item of contraband that may be classified as a weapon by description, use or appearance.' " (Johnson Aff. ¶ 4 & Ex. A: 1/9/96 Misbehavior Report; Defs.' 56.1 Stmt. ¶ 6; Jackson 56.1 Stmt. at

---

[1]. References to "Cplt." are to the Statement of Claim section of plaintiffs' complaint. Jackson's

56.1 Statement is sworn to by him as an affidavit, and will be considered as such by the Court.

p. 6 ¶ 3; Cplt. ¶ 5 & Ex. A–1: Misbehavior Report.)

### Jackson's Tier III Disciplinary Hearing

The most serious prison disciplinary charges are considered at Tier III hearings. 7 NYCRR Ch. V Part 254. At a Tier III hearing, the maximum penalty that may be imposed is keeplock or SHU confinement for a period of time limited only by the length of the inmate's sentence, as well as a loss of good time credit and privileges. 7 NYCRR 254.71(a)(1). *See generally Ruiz v. Selsky,* 96 Civ.2003, 1997 WL 137448 at \*1 (S.D.N.Y. March 24, 1997) (Peck, M.J.). This case does not involve any loss of good time credits.

On January 18, 1996, Jackson's Tier III disciplinary hearing was held. (Defs.' 56.1 Stmt. ¶ 7; Cplt. ¶¶ 5–6; Jackson 56.1 Stmt. at p. 6.) The hearing officer (who was neither defendant Johnson nor defendant Goord) found Jackson guilty and sentenced him to 99 days of keeplock and 99 days loss of privileges. (Jackson 56.1 Stmt. at p. 6 ¶ 4; Cplt. ¶ 6(i) & Ex. C: Hearing Disposition Report; Cplt. Ex. 5: Article 78 Petition ¶ 23.) Jackson's prison administrative appeals were all denied. (Jackson 56.1 Stmt. at p. 6 ¶ 4; Cplt. ¶ 6(ii) & Ex. D: 3/18/96 Review of Superintendent's Hearing; Defs.' 56.1 Stmt. ¶ 7.)

Jackson claims that "the evidence [presented at the Tier III hearing] was clearly tainted" and should have resulted in a dismissal of the charge. (Jackson 56.1 Stmt. at p. 6 ¶ 4; Cplt. ¶ 6.) Jackson also claims that his appointed assistant refused to help him. (Cplt. ¶ 6; Jackson 56.1 Stmt. at p. 6 ¶ 4.)

Jackson further claims that the hearing officer violated his constitutional due process rights as well as his Eighth Amendment rights, by finding him guilty of "false" charges. (Jackson 56.1 Stmt. at p. 6 ¶ 4; Cplt. ¶ 6.)[2]

On February 28, 1996, Jackson was transferred from Fishkill, a medium security prison, to Auburn Correctional Facility, a maximum facility prison in upstate New York approximately 300 miles from New York City. (Cplt.¶ 7.) Deputy Superintendent of Security for Fishkill Robert Ercole states that Jackson was transferred because of his "unsuitable behavior at Fishkill ( [having been] found guilty at a prison disciplinary hearing of possession of contraband), and because he was being threatened by other Fishkill inmates." (Ercole Aff. ¶ 3.)

### ANALYSIS

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. *See* 42 U .S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *Williams v. Kane,* 95 Civ. 0379, 1997 WL 527677 at \*3 (S.D.N.Y. Aug.25, 1997) (Peck, M.J.). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129

---

**2.** In May 1996, Jackson filed an Article 78 proceeding in state court to overturn the Tier III hearing's determination and punishment. (*See* Cplt. ¶¶ 10–11 & Ex. 5: Article 78 Petition Papers.) His Article 78 Petition was dismissed for failure to timely serve the complaint on the Attorney General. (Jackson 56.1 Stmt. at p. 7 ¶ 5.) In addition to the internal prison Tier III disciplinary proceedings, on February 20, 1996, the Dutchess County District Attorney filed a felony complaint charging Jackson with promoting prison contraband in the first degree in violation of Penal Law § 205.25(2). (Lahey Reply Aff. ¶ 2; Cplt. Ex. 2: 2/20/96 Felony Complaint.) *See also Jackson v. Johnson,* 985 F.Supp. 422, 423 (S.D.N.Y.1997).

The Dutchess County District Attorney's office ultimately dismissed the criminal complaint against Jackson on December 4, 1997. (Lahey

Reply Aff. ¶¶ 3–4; Jackson 12/13/97 Opposition Br. at 2 & Ex. A.) Assistant District Attorney Paul Lahey, who was assigned to prosecute Jackson, states that the decision to dismiss the charges was *not* based on the strength or merits of the prosecution's case against him. Instead, it was based on an informal policy by this office not to prosecute routine possession of contraband cases against prisoners where the contraband is recovered from a prisoner's personal possessions, as opposed to from a prisoner's actual person. The rationale behind this policy is that, given the cost and inconvenience of having to transport prisoners to court during the various stages of a criminal prosecution, the prosecution and punishment of such routine cases is best left to prison officials. (Lahey Reply Aff. ¶ 4, emphasis in the original.)

L.Ed.2d 867 (1994); *accord, e.g., Williams v. Kane,* 1997 WL 527677 at \*3; *Ruiz v. Selsky,* 96 Civ.2003, 1997 WL 137448 at \*4 (S.D.N.Y. March 24, 1997) (Peck, M.J.); *Morris v. Dann,* No. 95–CV–975, 1996 WL 732559 at \*3 (N.D.N.Y. Dec.11, 1996); *Zamakshari v. Dvoskin,* 899 F.Supp. 1097, 1109 (S.D.N.Y. 1995) (Sotomayor, D.J. & Peck, M.J.). Proof that state procedural law was violated does not by itself constitute a deprivation of due process because "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 (2d Cir.1990); *accord, e.g., Williams v. Kane,* 1997 WL 527677 at \*3; *Ruiz v. Selsky,* 1997 WL 137448 at \*4; *Zamakshari v. Dvoskin,* 899 F.Supp. at 1104.[3]

## I. UNDER SANDIN V. CONNER, 99 DAYS IN KEEPLOCK DOES NOT CONSTITUTE AN ATYPICAL AND SIGNIFICANT DEPRIVATION OF A PROTECTED LIBERTY INTEREST

### A. Sandin v. Conner

Defendants' summary judgment motion on Jackson's keeplock due process claim turns on the application of the Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which significantly changed the prisoner due process landscape. The Supreme Court there held:

> [W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. at 483–84, 115 S.Ct. at 2300 (fns. & citations omitted).

In *Sandin,* the prisoner was charged with a disciplinary infraction for physical interference with a correction officer, for using abusive or obscene language and for harassing employees. *Id.* at 475–76, 115 S.Ct. at 2295–96. The disciplinary committee refused the prisoner's request to present witnesses, found him guilty of the alleged misconduct and sentenced him to 30 days disciplinary segregation in the prison's Special Holding Unit ("SHU"). *Id.* The Supreme Court found that the inmate was not entitled to the procedural protections set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Sandin v. Conner,* 515 U.S. at 487, 115 S.Ct. at 2302. The Supreme Court stated:

> We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge 9 months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction. Indeed, the conditions at Halawa [prison] involve significant amounts of "lockdown time" even for inmates in the general population. Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

*Id.* at 486, 115 S.Ct. at 2301 (fns. omitted).

As a result of *Sandin,* the Second Circuit has announced a two-part standard which

---

**3.** For a discussion of the applicable standards governing summary judgment motions, see, e.g., *Meritxell, Ltd. v. Saliva Diagnostic Sys., Inc.,* 96

Civ. 2759, 1998 WL 40148 at \*4–5 (S.D.N.Y. Feb.2, 1998), and *Ruiz v. Selsky,* 1997 WL 137448 at \*3, and cases cited therein:

prisoners must satisfy to establish a procedural due process claim due to segregated confinement:

> To prevail, [the plaintiff inmate] must establish both that [1] the confinement or restraint creates an "atypical and significant hardship" under *Sandin*, and that [2] the state has granted its inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint.

*Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996); *accord, e.g., Arce v. Walker*, 139 F.3d 329, 333–34, 1998 WL 119612 at *3 (2d Cir.1998); *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir.1998); *Williams v. Kane*, 95 Civ. 0379, 1997 WL 527677 at *4 (S.D.N.Y. Aug.25, 1997) (Peck, M.J.); *Ruiz v. Selsky*, 96 Civ.2003, 1997 WL 137448 at *5 (S.D.N.Y. March 24, 1997) (Peck, M.J.); *Santana v. Keane*, 90 Civ. 6309, 1996 WL 465751 at *3 (S.D.N.Y. Aug.14, 1996).

A prisoner who satisfies both of these elements would be entitled to the procedural due process protections enunciated by *Wolff v. McDonnell*, 418 U.S. at 556–58, 94 S.Ct. at 2974–75, and its progeny. *See, e.g., Foxworth v. Selsky*, No. 95–CV–1168, 1998 WL 59448 at *2, *4 (N.D.N.Y. Feb.9, 1998); *Charles v. Coughlin*, 985 F.Supp. 88, 93 (E.D.N.Y.1997); *Nicholas v. Remillard*, No. 92–CV–900, 1997 WL 711385 at *5 (N.D.N.Y. Nov.13, 1997); *Williams v. Kane*, 1997 WL 527677 at *3 & n. 1; *Ruiz v. Selsky*, 1997 WL 137448 at *5; *Pacheco v. Vanwyk*, No. 94–CV–456, 1997 WL 642540 at *8 (N.D.N.Y. Oct.15, 1997); *Barnes v. Starks*, 95 Civ. 4891, 1996 WL 648956 at *3 & n. 4 (S.D.N.Y. Nov.6, 1996); *Santana v. Keane*, 1996 WL 465751 at *3 & n. 1.

## B. *Edwards v. Balisok and Its Interpretation*

In May 1997, two years after its *Sandin* decision, the Supreme Court decided *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). *Edwards* involved a prisoner § 1983 action seeking damages for alleged due process violations during a prison disciplinary proceeding that resulted in a punishment of disciplinary segregation and loss of good time credits. 117 S.Ct. at 1587. Without even mentioning *Sandin*, the Supreme Court held that a § 1983 damage claim would not lie because it necessarily implied the invalidity of the prisoner's punishment which had not yet been set aside.

The Supreme Court's opinion in *Edwards* began with a discussion of the Supreme Court's prior *Heck v. Humphrey* decision:

> In *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 2372–73, 129 L.Ed.2d 383 (1994), this Court held that a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated. This case presents the question whether a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is cognizable under § 1983.

*Edwards v. Balisok*, 117 S.Ct. at 1586.

*Heck*, which *Edwards* relied upon, was a § 1983 claim for due process violations during a state criminal prosecution, a suit that the Supreme Court analogized to a malicious prosecution action. In *Heck*, the Supreme Court held:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, *a § 1983 plaintiff must prove that the conviction or sentence has been reversed* on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, *when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it*

*would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.* But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey,* 512 U.S. at 486–87, 114 S.Ct. at 2372–73 (fns. omitted & emphasis added).

*Edwards* applied *Heck* to a prisoner's challenge to the prison disciplinary proceeding that resulted in a deprivation of good time credits: "We conclude, therefore, that [the plaintiff inmate's] claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the [prison] decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Edwards v. Balisok,* 117 S.Ct. at 1589.

There is a Circuit split as to *Edwards'* effect on § 1983 due process claims concerning prison disciplinary proceedings that result in SHU/keeplock punishment but no loss of good time credits.

In *Stone–Bey v. Barnes,* 120 F.3d 718 (7th Cir.1997), the Seventh Circuit dismissed a § 1983 claim seeking damages for prison disciplinary segregation without loss of good time credit, citing *Heck v. Humphrey* and *Edwards v. Balisok. Stone–Bey v. Barnes,* 120 F.3d at 719, 721–22. The Seventh Circuit explained:

*Does it make any difference in applying Heck that the sentence imposed was one of disciplinary segregation alone, as opposed to segregation coupled with a loss of good-time credits? ... In our view, it does not.* The Supreme Court was concerned in *Heck* not only with the particular sentence imposed, but also with the fact of the prisoner's conviction itself.... *The "conviction" in the prison disciplinary sense is*

*the finding of guilt on the disciplinary charge, and if success on the plaintiff's section 1983 claim necessarily would imply the invalidity of that finding, then Heck bars the claim until such time as its requirements are satisfied ....* It is clear as well that those requirements can be met even where the sentence imposed is only one of disciplinary segregation. In this case, for example, [plaintiff] could have satisfied *Heck* by pursuing his administrative appeals within the state system ..., or by filing a petition for a writ of habeas corpus in federal district court.... Given that, we find the instant prison disciplinary "judgment" to be within the scope of *Heck.*

*Stone–Bey v. Barnes,* 120 F.3d at 721 (emphasis added).[4]

In contrast, the D.C. Circuit has limited *Edwards* to prison disciplinary cases involving a loss of good time credits:

We conclude, however, that [plaintiff's] suit, which challenges only his placement in administrative segregation, is not of the type to which it is appropriate to apply *Preiser* and its progeny. *The [Supreme] Court has never deviated from Preiser's clear line between challenges to the fact or length of custody and challenges to the conditions of confinement.* In *Edwards,* the Court was careful to respect the distinction drawn by *Preiser,* repeatedly characterizing the plaintiff's claim as one that would "necessarily imply the invalidity of the deprivation of his good-time credits" and therefore hasten his release. *Heck,* too, observed that the damages action in that case was in effect an attack on " 'the fact or length of confinement.' " The Court also did not question the plaintiff's invocation of section 1983 in *Sandin,* a case in which the underlying prison disciplinary proceeding affected only the plaintiff's conditions of confinement, not the duration of his sentence.

*Brown v. Plaut,* 131 F.3d 163, 167–68 (D.C.Cir.1997) (citations & fns. omitted, emphasis added).[5] The D.C. Circuit explicitly rejected the Seventh Circuit's contrary view:

**4.** *See also Stewart v. Smith,* 124 F.3d 205 (table), 1997 WL 527747 at \*1–2 (7th Cir. Aug.22, 1997) (*Heck* and *Edwards* bar prisoner's segregation

and transfer claims, even where no loss of good time credit).

**5.** *See also Neal v. Shimoda,* 131 F.3d 818, 823–24 (9th Cir.1997) (permits inmate's § 1983 claim

We recognize that one court of appeals has applied *Edwards* to a case in which the prisoner was subject only to disciplinary segregation, and not to loss of good time or any other change in the length of confinement. *See Stone–Bey v. Barnes*, 120 F.3d 718, 721 (7th Cir.1997). We have found no other court of appeals decisions reaching this conclusion, and for the reasons set out in the text, we do not find its reasoning persuasive.

*Brown v. Plaut*, 131 F.3d at 168 n. 5.

Several Southern District decisions have utilized *Edwards* to dismiss prisoner § 1983 due process claims challenging disciplinary confinement without loss of good time credits. For example, in *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460 (S.D.N.Y.1998), where the prisoner's § 1983 suit challenged a prison disciplinary hearing that resulted in 90 days in SHU and 90 days loss of privileges (but no loss of good time credits), Judge Sotomayor dismissed under *Edwards*:

> In *Edwards v. Balisok*, the Supreme Court held that a "claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures" is not cognizable under 42 U.S.C. § 1983 "where the allegations of due process violations, if true, would 'necessarily imply the invalidity of the punishment imposed' unless the prisoner establishes that the determination at issue has previously been invalidated." "[T]he Supreme Court is sending a loud message: an inmate cannot seek money damages for alleged deprivations arising out of a prison disciplinary hearing by commencing an action under § 1983 unless the results of that hearing already have been invalidated." As in *Edwards*, the plaintiff here is challenging the impartiality and bias of the hearing officers. Because plaintiff's allegations necessarily imply the invalidity of the dispositions of these two disciplinary hearings, plaintiff's claims under § 1983 are precluded by *Edwards*.

*Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 1998 WL 65987 at *9 (citations omitted); *see also Jenkins v. Haubert*, 95 Civ. 5453, 1998 WL 148332 at *2–3 (S.D.N.Y. March 30, 1998) (Mukasey, D.J.); *Odom v. Coombe*, 95 Civ. 6378, 1998 WL 120361 at *3 (S.D.N.Y. March 18, 1998) (Chin, D.J.); *Burnell v. Coughlin*, 975 F.Supp. 473, 477–79 (W.D.N.Y. 1997); *Scott v. Scully*, 93 Civ. 8777, 1997 WL 539951 at *2 (S.D.N.Y. Aug.28, 1997) (Baer, D.J.); *Sims v. Artuz*, 96 Civ. 0216, 1997 WL 527882 at *11 (S.D.N.Y. Aug.25, 1997) (Preska, D.J.); *Higgins v. Coombe*, 95 Civ. 8696, 1997 WL 328623 at *9–10 (S.D.N.Y. June 16, 1997) (Sotomayor, D.J.).

On the other hand, in dicta in *Brodie v. Kuhlman*, 96 Civ. 0328, 1997 WL 411932 at *1–2 (S.D.N.Y. July 23, 1997), Judge Baer indicated that a challenge to disciplinary confinement without loss of good time credits can be raised in a § 1983 action, explaining that "[b]ecause confinement to SHU goes to the conditions of confinement, as opposed to the 'fact or duration' of confinement, § 1983 appears to be an appropriate vehicle with an appropriate remedy." *Brodie v. Kuhlman*, 1997 WL 411932 at *1 (citation omitted).

The Second Circuit has not directly addressed *Edwards*' application to § 1983 claims about prison disciplinary proceedings that result in disciplinary confinement without loss of good time credits. After *Edwards*, however, the Second Circuit has decided a number of § 1983 disciplinary confinement due process cases on *Sandin* grounds without mentioning *Edwards*. *See, e.g., Arce v. Walker*, 139 F.3d 329 (2d Cir. 1998); *Scott v. Albury*, 138 F.3d 474 (2d Cir.1998); *Wright v. Coughlin*, 132 F.3d 133 (2d Cir.1998); *Sealey v. Giltner*, 116 F.3d 47 (2d Cir.1997). Moreover, there are scores of post-*Edwards* district court decisions from within the Second Circuit that analyze § 1983 prison disciplinary confinement cases under *Sandin* without addressing *Edwards*. (*See* cases cited at pages 360–62 below.)

challenging state Sex Offender Treatment Program that affects their eligibility for parole, since if inmates win, "it will in no way guarantee parole or necessarily shorten their prison sentences by a single day.... Because the inmates'

challenge in this case does not necessarily imply the invalidity of their convictions or continuing confinement, it is properly brought under § 1983.").

This Court agrees with the D.C. Circuit's *Brown v. Plaut* opinion. A prisoner § 1983 case seeking damages for disciplinary confinement without loss of good time credits should be viewed as a condition of confinement case and therefore should be analyzed under *Sandin;* such a case does not affect the duration of confinement and thus does not need to be examined under *Heck* and *Edwards.*[6] Moreover, if *Edwards* were applicable to disciplinary confinement without good time loss cases, the Supreme Court would have said so in *Sandin* (it could have decided *Sandin* using a *Heck–Edwards* analysis without going into the atypical and significant hardship standard) or at least in *Edwards.* The Supreme Court's decision of *Edwards* shortly after *Sandin* is an indication that *Edwards* applies only in loss of good time credit cases and not where the only punishment is disciplinary confinement. This conclusion also is recognized implicitly in the recent Second Circuit disciplinary confinement decisions that employ a *Sandin* analysis, without mentioning *Edwards.*

### C. *Application of Sandin to Confinement of 99 Days in Keeplock*

The Second Circuit has clearly instructed that the *Sandin* analysis requires a factual inquiry as to the length and conditions of confinement:

> The language and analysis in *Sandin* make clear that the Court did not intend to suggest that discipline in segregated confinement could never present such an "atypical, significant deprivation." ... [W]e now state explicitly: *Sandin* did not create a per se blanket rule that disciplinary confinement may never implicate a liberty interest.... [D]istrict courts must examine the circumstances of a confinement to determine whether that confinement affected a liberty interest.

*Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997); *see, e.g., Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998); *Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997) (noting the "desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement"); *Brooks v. DiFasi,* 112 F.3d 46, 48–49 (2d Cir.1997); *Williams v. Kane,* 95 Civ. 0379, 1997 WL 527677 at *5–6 (S.D.N.Y. Aug.25, 1997) (Peck, M.J.); *Wright v. Miller,* 973 F.Supp. 390, 394 (S.D.N.Y.1997) ("district courts are required to make factual findings with respect to the conditions of confinement at issue in each case").[7]

The factors a district court should consider in determining whether an inmate has suffered "atypical and significant" hardship under *Sandin* include:

> (1) the effect of disciplinary action on the length of prison confinement; (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions; and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement.

*Wright v. Coughlin,* 132 F.3d at 136; *see also, e.g., Foxworth v. Selsky,* No. 95–CV–1168, 1998 WL 59448 at *1 n. 2 (N.D.N.Y. Feb 9, 1998). Duration is one of the most important factors in that analysis. *See, e.g., Arce v. Walker,* 139 F.3d 329, 336–37, 1998 WL 119612 (2d Cir.1998); *Scott v. Albury,* 138 F.3d 474, 478, 1998 WL 100549 (2d Cir. 1998); *Wright v. Coughlin,* 132 F.3d at 136–37; *Brooks v. DiFasi,* 112 F.3d at 48–49; *Husbands v. McClellan,* 990 F.Supp. 214, 216–17, 1998 WL 24232 (W.D.N.Y.1998); *Warren v.. Irvin,* 985 F.Supp. 350, 353 (W.D.N.Y.1997); *Kingwood v. Coombe,* 96 Civ. 0432, 1997 WL 323913 at *4 (S.D.N.Y. June 13, 1997); *Zaire v. Mitchell,* No. 95–CV–1172, 1997 WL 176309 at *3 (N.D.N.Y. April 10, 1997) ("Most courts look to the actual length of the sentence imposed in the

---

**6.** Of course, if the prison disciplinary hearing results in both a loss of good time credits and SHU confinement, *Edwards* applies.

**7.** *See also, e.g., Hynes v. Riccoboni,* No. 95–CV–901, 1998 WL 106236 at *2 (N.D.N.Y. March 3, 1998); *Husbands v. McClellan,* 990 F.Supp. 214, 216–17, 1998 WL 24232 (W.D.N.Y.1998); *War-*

*ren v. Irvin,* 985 F.Supp. 350, 353 (W.D.N.Y. 1997); *Thomas v. Irvin,* 981 F.Supp. 794, 799 (W.D.N.Y.1997); *Hailey v. Provost,* No. 94–CV–1616, 1997 WL 627547 at *6 (N.D.N.Y. Oct.9, 1997); *Hamilton v. Poole,* No. 95–CV–239, 1997 WL 626406 at *4 (W.D.N.Y. Sept.22, 1997); *Boddie v. Brunelle,* No. 95–CV–748, 1997 WL 626407 at *7 (W.D.N.Y. Sept.19, 1997).

disciplinary hearing to determine whether a liberty interest exists."), *aff'd*, 131 F.3d 132 (2d Cir.1997); *Cespedes v. Coughlin*, 956 F.Supp. 454, 472 (S.D.N.Y.) ("The case law suggests that it is the length of SHU confinement which is the crucial consideration, particularly where the inmate has alleged no particular hardship other than the term of confinement itself."), *vacated*, 969 F.Supp. 254 (S.D.N.Y.1997); *see also* cases cited below.

The Second Circuit's recent *Sandin* pronouncement makes clear that it is the punishment actually imposed on the prisoner, and not the potential punishment that could have been imposed at the Tier III hearing, that controls the *Sandin* analysis. *Scott v. Albury*, 138 F.3d 474, 1998 WL 100549 at *3–5; *see also, e.g., Husbands v. McClellan*, 990 F.Supp. 214, 1998 WL 24232 at *2; *Warren v. Irvin*, 985 F.Supp. at 353; *Beaman v. Coombe*, 96 Civ. 3622, 1997 WL 538833 at *4 n. 3 (S.D.N.Y. Aug.29, 1997); *Ruiz v. Selsky*, 96 Civ. 2003, 1997 WL 137448 at *7 (S.D.N.Y. March 24, 1997) (Peck, M.J.). Jackson's actual punishment here was 99 days in keeplock (and 99 days loss of certain privileges).

The Second Circuit, however, has not yet stated a bright line rule that any particular length of confinement does, or does not, constitute an atypical and significant hardship. *See, e.g., Brooks v. DiFasi*, 112 F.3d at 49; *Lee v. Coughlin*, 93 Civ. 8952, 1997 WL 193179 at *3 (S.D.N.Y. April 18, 1997) ("The Second Circuit has not yet prescribed a bright line rule ... on what length of confinement constitutes an atypical and significant hardship."). There have been numerous post-*Sandin* decisions by the district courts in this Circuit, however, and while the decisions are not unanimous, "the precedent established by these district courts unequivocally demonstrates their virtual refusal to find an atypical and significant hardship arising from a prisoner's confinement, even where the term of confinement is substantial." *Cespedes v. Coughlin*, 956 F.Supp. at 470–71 (citing cases); *accord, e.g., Williams v. Kane*, 1997 WL 527677 at *8; *Ruiz v. Selsky*, 1997 WL 137448 at *5. Indeed, Chief Judge McAvoy of the Northern District of New York concluded that "courts in this and other districts have subsequently [to *San-*

*din* ] ruled that increasingly lengthy periods of segregated housing did not impose an 'atypical and significant hardship' within the meaning of *Sandin*. Indeed, *it now appears that any period of segregation of one year or less affords no protected liberty interest." Polanco v. Allan*, No. 93–CV–1498, 1996 WL 250237 at *3 (N.D.N.Y. May 6, 1996) (emphasis added) (365 days in SHU upheld), *reaff'd on reconsideration*, 1996 WL 377074 at *2 (N.D.N.Y. July 5, 1996) ("the general rule of a year or less seems appropriate, absent extraordinary circumstances, which plaintiff has not offered"; 365 days in SHU was not "outside the parameters of plaintiff's sentence"); *accord, e.g., Tellier v. Scott*, 94 Civ. 3459, 1998 WL 65983 at *4 n. 12 (S.D.N.Y. Feb.18, 1998) (noting that "[a] number of district courts have dismissed claims where the duration of segregated confinement was one year or less"); *Williams v. Kane*, 1997 WL 527677 at *8 (citing cases); *Dawes v. Dibiase*, No. 91–CV–479, 1997 WL 376043 at *5–6 (N.D.N.Y. July 3, 1997) ("A review of numerous post-*Sandin* decisions throughout the Second Circuit reveals a trend illustrating the proposition that confinement in SHU of up to one year does not implicate a liberty interest under *Sandin*.... In light of the above referenced body of post-*Sandin* caselaw, this Court will not hold that confinement in SHU of six, twelve and two months, respectively, imposes an 'atypical and significant hardship' on plaintiff.") (citing cases); *Ruiz v. Selsky*, 1997 WL 137448 at *5; *Marino v.. Klages*, 973 F.Supp. 275, 278 (N.D.N.Y. 1997) ("district courts in the Second Circuit have generally found that any SHU confinement under a year in time is not an atypical or significant hardship on the prisoner"); *Duamutef v. O'Keefe*, No. 6:94–CV–0470, 1996 WL 673125 at *8 (N.D.N.Y. March 14, 1996) ("Increasingly ... courts in this and other districts have found longer and longer periods of segregated housing not to be an 'atypical and significant hardship' to the point where it now appears that any period of segregation under one year affords no protected liberty interest.").

The decisions in this Circuit bear out Chief Judge McAvoy's conclusion. *See, e.g., Williams v. Kane*, 1997 WL 527677 at 6–8 & n. 4 (citing cases); *Ruiz v. Selsky*, 1997 WL

137448 at *5 & n. 5 (citing cases); *Hynes v. Riccoboni,* No. 95–CV–901, 1998 WL 106236 at *3 (N.D.N.Y. March 3, 1998) ("30 day confinement by itself is insufficient [to implicate a protected liberty interest] given that '[a] review of numerous post-*Sandin* decisions throughout the Second Circuit reveals a trend illustrating the proposition that confinement ... of up to one year does not implicate a liberty interest under *Sandin*' ").[8]

Jackson has not presented any evidence about the conditions of his SHU confinement, much less any evidence that his SHU conditions were worse than the conditions involved in the above cited cases. Consistent with the above-cited cases, Jackson's punishment of 99 days in keeplock during a five to fifteen year sentence does not constitute a significant and atypical hardship under *Sandin.*[9]

## II. *99 DAYS IN KEEPLOCK, ALONE, IS INSUFFICIENT TO STATE A CLAIM OF CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT*

The Second Circuit has reiterated a prisoner's burden of proof in order to state an Eighth Amendment claim based on prison conditions:

In the context of an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991) (quotations omitted). Under this standard, the deprivation alleged by the prisoner must be in objective terms "sufficiently serious" such that the deprivation "den[ied] the minimal civilized measure of life's necessities." *Id.* at 298, 111 S.Ct. at 2324 (quotations omitted). In addition, the prison officials must have acted with deliberate indifference in that they "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (quotation omitted), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995).

*Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir.1996); *see also, e.g., Cruz v. Jackson,* 94 Civ. 2600, 1997 WL 45348 at *5, *6 (S.D.N.Y. Feb.5, 1997); *Jones v. Bishop,* 981 F.Supp. 290, 294 (S.D.N.Y.1997).

Reading Jackson's pro se papers liberally, as the Court must,[10] he appears to argue that prison officials punished him by putting him in keeplock for 99 days, in violation of the

---

**8.** *Williams* and *Ruiz* collected virtually all of the then decided *Sandin* cases within the Circuit. For subsequent *Sandin* decisions, *see Arce v. Walker,* 139 F.3d 329, 1998 WL 119612 at *7 (affirming that 18 days in SHU is not atypical); *McIntosh v. Daddario,* 94 Civ. 6709, 1998 WL 118156 at *4 (S.D.N.Y. March 17, 1998) ("keeplock confinement for 45 days is not sufficient to meet the liberty interest standard as enunciated in *Sandin* "); *Smalls v. Keane,* 95 Civ. 0184, 1998 WL 108010 at *2 (S.D.N.Y. March 12, 1998) ("plaintiff's five day confinement in keeplock clearly does not constitute 'an atypical and significant hardship' implicating a protected liberty interest"); *Jackson v. New York Dep't of Correctional Servs.,* 994 F.Supp. 219, 223 (S.D.N.Y. 1998) ("Plaintiff's confinement in keeplock for 13 days, does not amount to an atypical and significant hardship under *Sandin* as a matter of law."); *Husbands v. McClellan,* 990 F.Supp. 214, 217–19 (180 days in SHU); *Warren v. Irvin,* 985 F.Supp. at 354–56 (161 days in SHU during 6 to 12 year prison sentence); *Nicholas v. Remillard,* No. 92–CV–900, 1997 WL 711385 at *5 (N.D.N.Y. Nov.13, 1997) (25 days in keeplock); *Thomas v. Irvin,* 981 F.Supp. at 799–800 (7 days in drug watch isolation); *Carpio v. Walker,* No. Civ.A.95CV1502, 1997 WL 642543 at *6 (N.D.N.Y. Oct.15, 1997) (potential 30 days SHU or keeplock, and actual 5 days in keeplock); *Hamilton v. Poole,* 1997 WL 626406 at *5–6 (60 days in keeplock); *Boddie v. Brunelle,* 1997 WL 626407 at *7–8 (55 hours in SHU pending disciplinary hearing); *Beaman v. Coombe,* 1997 WL 538833 at *4 (92 days in SHU); *Gill v. Pact Org.,* 95 Civ. 4510, 1997 WL 539948 at *6–7 (S.D.N.Y. Aug.28, 1997) (18 days in administrative lockup).

**9.** Because Jackson has not established the first *Frazier* prong (that his 99 day keeplock confinement is an atypical and significant hardship under *Sandin* ) the Court need not reach the second *Frazier* prong (whether New York has granted its inmates a liberty interest in being free of SHU confinement). *See, e.g., Silva v. Sanford,* 91 Civ. 1776, slip op. at 52–53 n. 24 (S.D.N.Y. April 22, 1998) (Peck, M.J.) (collecting cases); *Williams v. Kane,* 1997 WL 527677 at *8 n. 6; *Ruiz v. Selsky,* 1997 WL 137448 at *6 n. 6.

**10.** *See, e.g., Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995); *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986) ("Pro se complaints ... are held 'to less stringent standards than formal pleadings drafted by lawyers.' "); *Patrick v. LeFevre,* 745 F.2d 153, 160 (2d Cir.1984).

Eighth Amendment. Jackson, however, does not allege or provide any evidence as to how 99 days of keeplock deprived him of "the minimal civilized measure of life's necessities," or that defendants acted with "deliberate indifference" to his health and safety.

The mere placement in keeplock for 99 days is not sufficiently egregious to constitute cruel and unusual punishment under the Eighth Amendment.[11] *See, e.g., Branham v. Meachum*, 77 F.3d at 631 (dismissed Eighth Amendment claim based on confinement in SHU where prisoner's "allegations that the prison officials imposed various restraints on him does not suggest that the officials acted with deliberate indifference to his health or safety"); *Jackson v. New York Dep't of Correctional Servs.*, 994 F.Supp. 219, 222–23, 1998 WL 59060 at *3 (S.D.N.Y.1998) ("In *Anderson v. Coughlin*, 757 F.2d 33, 34 (2d Cir.1985), the Second Circuit held that the conditions of SHU in several New York state prisons did not violate the Eighth Amendment. Here, the plaintiff did not allege any treatment that would constitute a violation of the Eighth Amendment. He simply alleges that he was placed in keeplock for 13 days. He does not allege any specific ways in which he was deprived of a serious human need, such as that he was deprived of the right to exercise.... The mere placement in keeplock for 13 days does not constitute an Eighth Amendment violation."); *Jones v. Bishop*, 981 F.Supp. at 294 (spending 455 days in SHU in the cold is insufficient to state an Eighth Amendment claim); *Warren v. Irvin*, 985 F.Supp. 350, 357 (W.D.N.Y. 1997) (ordinary deprivations claimed during 161 days in SHU "are not sufficiently serious to constitute cruel and unusual punishment under the Eighth Amendment"); *Hailey v. Provost*, No. 94–CV–1616, 1997 WL 627547 at *6 n. 4 (N.D.N.Y. Oct.9 1997) ("Although [plaintiff] alleges [an Eighth Amendment] violation, plaintiff does not explain how his rights pursuant to that amendment were violated. Placement in SHU, without more, does not rise to the level of an Eighth Amendment violation."); *Beaman v. Coombe*, 96 Civ. 3622, 1997 WL 538833 at *5 (S.D.N.Y. Aug.29, 1997) (92 days in SHU does not give rise to Eighth Amendment claim); *Kingwood v. Coombe*, 96 Civ. 0432, 1997 WL 323913 at *7 (S.D.N.Y. June 13, 1997) (plaintiff spent over 200 days in SHU, but "absent any allegations that plaintiff's treatment in SHU confinement was in some manner different from usual SHU treatment, his [Eighth Amendment] claim must fail"); *Wilkerson v. Stinson*, No. 95–CV–962, 1997 WL 141678 at *5 (N.D.N.Y. March 27, 1997) (summary judgment for defendant on Eighth Amendment claim for 15 days in keeplock, because "[o]ther than by offering conclusory allegations, plaintiff simply does not detail how the conditions of confinement rose to the level of ... Eighth Amendment violations"); *Brewton v. Hollister*, 948 F.Supp. 244, 250–51 (W.D.N.Y. 1996) (because "segregated confinement does not itself violate the Eighth Amendment," court grants summary judgment dismissing claim for 74 days in SHU where "[p]laintiff has not alleged facts that would support the conclusion that the conditions in ... SHU were sufficiently barbarous or that there was a substantial risk of serious harm.... [and] he has not alleged that defendant ... had the requisite culpable state of mind to support an Eighth Amendment claim"); *Martinez v. Coombe*, No. 95–CV–1147, 1996 WL 596553 at *7 (N.D.N.Y. Oct.15, 1996) ("The plaintiff is claiming that he was not guilty of the charge, and that there were procedural irregularities in the [disciplinary] hearing, not that 365 days in SHU was disproportionate to an assault charge. The plaintiff also does not claim that the conditions in SHU involved the unnecessary and wanton infliction of pain. Thus, the plaintiff does not state an Eighth Amendment claim.").

Accordingly, defendants' summary judgment motion on plaintiffs' Eighth Amendment claim should be granted.

### III. *JOE JACKSON'S RETALIATION CLAIMS SHOULD BE GRANTED BECAUSE C.O. JOHNSON WAS REQUIRED TO ISSUE THE MISBEHAVIOR REPORT AND DEFENDANTS WERE NOT PERSONALLY INVOLVED IN JACKSON'S PRISON TRANSFER*

#### A. *Standards for Retaliation Claim*

A plaintiff's burden of proof in stating a retaliation claim in a prison case is clear:

---

**11.** Moreover, plaintiffs did not name the hearing officer as a defendant in this case.

The plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff ... 'even in the absence of the protected conduct.'... Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.

*Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citing *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994)); *see also, e.g., James v. Artuz,* 93 Civ. 2056, 1998 WL 50206 at *3 (S.D.N.Y. Feb.6, 1998); *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878 at *6 (S.D.N.Y. Nov.17, 1997); *LaBounty v. Coombe,* 95 Civ. 2617, 1996 WL 684168 at *10 (S.D.N.Y. Nov.26, 1996); *Baker v. Zlochowon,* 741 F.Supp. 436, 439 (S.D.N.Y.1990) ("If the retaliatory actions would have been taken on a constitutionally valid basis in any event, summary judgment is warranted" for defendant).

The Second Circuit has advised that the prison administration's actions should be granted deference:

A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority."

*Graham v. Henderson,* 89 F.3d at 79 (quoting *Lowrance v. Achtyl,* 20 F.3d at 535); *accord, e.g., James v. Artuz,* 1998 WL 50206 at *3; *LaBounty v. Coombe,* 1996 WL 684168 at *10.

Prisoners' claims of retaliation must be examined with skepticism and particular care because they are " 'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson,* 89 F.3d at 79 (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)); *see also, e.g., Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995); *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 467, 1998 WL 65987 at *4 (S.D.N.Y.1998) (prisoner retaliation claims

" 'bear a somewhat heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial' "); *Gadson v. Goord,* 1997 WL 714878 at *6; *Gill v. Pact Org.,* 95 Civ. 4510, 1997 WL 539948 at *12 (S.D.N.Y. Aug.28, 1997).

### B. *Application to Jackson's Misbehavior Report Retaliation Claim*

An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997). On the other hand, a "prisoner has a right not to be subjected to false misconduct charges in retaliation for his exercise of a constitutional right." *Harris v. Keane,* 962 F.Supp. 397, 405 (S.D.N.Y.1997); *see also, e.g., Green v. Artuz,* 94 Civ. 8281, 1998 WL 106142 at *5 (S.D.N.Y. March 10, 1998).

Jackson asserts that his refusal to snitch on other inmates, as well as C.O. Johnson's racism, were substantial or motivating factors in C.O. Johnson issuing a misbehavior report. Jackson alleges that C.O. Johnson had a "retaliatory and racist mind state," evidenced by his "flagrant disregard for following procedure" by failing to turn in the damaged razor blade to "someone in ranking authority." (Jackson 56.1 Stmt. at pp. 3–4.) Jackson further alleges that "while taking [Jackson] to protective custody unit 'P', [C.O. Johnson] made threats at [him], because [he] did not implicate a particular inmate named, N. Reed, who had grieved [C.O. Johnson] previously for [C.O. Johnson's] racially motivated attacks against black inmate." (Jackson 56.1 Stmt. at p. 4; Cplt. ¶ 3.) The Court assumes, without deciding, that Jackson satisfies the first prong of the test—that he has constitutional rights not to snitch and not to be racially discriminated against. *Cf. Watson v. McGinnis,* 964 F.Supp. 127, 131 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.) (prison guard's labeling a prisoner a snitch and causing the prisoner harm states an Eighth Amendment claim) (citing cases).

Jackson meets the second prong of his burden, showing a genuine issue of material fact that the protected conduct was a substantial or motivating factor in his discipline. If Jackson's allegations that C.O. Johnson

threatened him for refusing to snitch and the razor blade was not his are true—and be-cause this is a summary judgment motion the Court must assume the truth of these allega-tions—those allegations are sufficient to raise an inference that C.O. Johnson's discipline of Jackson was retaliatory.

The burden thus shifts to C.O. Johnson to prove that he would have taken the chal-lenged action—issuing the misbehavior re-port—for a proper reason in any event. He has done so. C.O. Johnson was packing up Jackson's property to move Jackson into pro-tective custody, and therefore C.O. Johnson had a legitimate reason to look in Jackson's housing cube where the damaged razor was located. (Johnson Aff. ¶ 4.) Having found the damaged razor and concluded that it could be used as a weapon, C.O. Johnson was *required* by applicable regulations to issue a misbehavior report: " 'Every incident of in-mate misbehavior involving danger to life, health, security or property *must* be report-ed, in writing, as soon as practicable.' " (Johnson Aff. ¶ 2, citing 7 NYCRR Ch. 5 § 251–3.1(a), emphasis added.) Therefore, C.O. Johnson was under a duty to issue Jackson the misbehavior report. C.O. John-son thus has met his burden of showing that he would have issued a misbehavior report to Jackson even in the absence of any retaliato-ry motive.

Accordingly, the Court should grant defen-dant C.O. Johnson's summary judgment mo-tion dismissing Jackson's misbehavior report retaliation claim.

### C. *Joe Jackson's Retaliatory Transfer Claim Should Be Dismissed Because He Has Not Shown That Defendants Johnson or Goord Were Personally Involved in the Transfer Decision*

"In order to maintain a cause of action [under § 1983] against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of respondeat superior does not apply to § 1983 actions." *Zamakshari v. Dvoskin*, 899 F.Supp. 1097, 1109 (S.D.N.Y.1995) (Sotoma-yor, D.J. & Peck, M.J.) (citing *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert.*

*denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *accord, e.g., Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997); *Co-lon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.); *Wright v. Nunez*, 950 F.Supp. 610, 611 (S.D.N.Y.1997) (Martin, D.J. & Peck, M.J.); *McCray v. Kralik*, 96 Civ. 3891, 1996 WL 378273 at *3 (S.D.N.Y. July 1, 1996) (Peck, M.J.).

"The personal involvement of a superviso-ry defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defen-dant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional prac-tices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subor-dinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indif-ference to the rights of inmates by failing to act on information indicating that unconstitu-tional acts were occurring." *Colon v. Cough-lin*, 58 F.3d at 873; *see also, e.g., Watson v. McGinnis*, 964 F.Supp. at 130; *Wright v. Nunez*, 950 F.Supp. at 611; *McCray v. Kra-lik*, 1996 WL 378273 at *3; *Zamakshari v. Dvoskin*, 899 F.Supp. at 1109.

Jackson alleges that DOCS retaliated against him by transferring him from Fish-kill to Auburn Correctional Facility. (Cplt.¶ 7.) Preliminarily, the Court notes that DOCS is not a named plaintiff and, as this Court previously stated in denying plaintiffs' motion to amend the complaint, "state agen-cies such as DOCS, are immune from prison-er § 1983 suits." *Jackson v. Johnson*, 985 F.Supp. 422, 426 (S.D.N.Y.1997).

Jackson cannot maintain his retaliatory transfer claim against these defendants be-cause he does not claim, much less submit any evidence, that C.O. Johnson or Commis-sioner Goord had any personal involvement in his transfer. In fact, the only evidence before the Court is to the contrary. Fish-kill's Deputy Superintendent of Security Robert Ercole testified that Commissioner Goord "is not involved in routine transfers

such as plaintiff's 1996 transfer, and a Correction Officer, such as Thomas Johnson, lacks the authority to initiate or authorize an inmate transfer." (Ercole Aff. ¶ 5.) [12] Defendants therefore are entitled to summary judgment on plaintiffs' retaliatory transfer claim. *See, e.g., Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986) (summary judgment for corrections officer, since "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing"); *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878 at *9 (S.D.N.Y. Nov.17, 1997) ("the Court must dismiss plaintiff's retaliatory transfer claim because he has not alleged the personal involvement of any of the named defendants in the transfer decision"); *Muhammad v. Francis,* 94 Civ. 2244, 1996 WL 657922 at *9 (S.D.N.Y. Nov.13, 1996) (summary judgment for defendants on retaliatory transfer claims where plaintiff failed to allege or prove that defendants were personally involved in the transfer); *Wallace v. Conroy,* 945 F.Supp. 628, 637 (S.D.N.Y. 1996) (complaint dismissed for failure to show that defendant warden was personally involved in plaintiff's transfer); *Green v. Coughlin,* 633 F.Supp. 1166, 1169–70 (S.D.N.Y.1986) (granting summary judgment to defendants commissioner and warden on plaintiff's unconstitutional transfer claim because plaintiff failed to allege that defendants were personally involved); *Respress v. Coughlin,* 585 F.Supp. 854, 859–60 (S.D.N.Y. 1984) (summary judgment for commissioner where no evidence he had any personal involvement with decision to transfer plaintiff).

Accordingly, defendants should be granted summary judgment on Joe Jackson's retaliation claims.

## IV. *RUBY JACKSON HAS NO CONSTITUTIONAL RIGHT TO HAVE JOE JACKSON REMAIN AT A PARTICULAR PRISON*

Ruby Jackson's claim is based on the long distances she travelled to visit her husband when he was transferred from Fishkill to Auburn, which is further away from New York City.

The law is clear, however, that an inmate such as Joe Jackson has no constitutional interest in remaining at a certain facility. *See, e.g., Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) ("under [New York] law [inmate] had no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct"); *Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.) (prisoner "had no liberty interest in remaining at the Auburn facility since New York law does not place conditions on interprison transfers"), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *Sher v. Coughlin,* 739 F.2d 77, 80 (2d Cir.1984) (prisoner's "transfer from Auburn to Attica was not constitutionally required to be preceded by due process procedures because neither the Fourteenth Amendment independently nor New York law accords an inmate a liberty interest in remaining at a particular prison facility .... The Supreme Court made clear in *Haymes* that a transfer between New York prisons does not deny a liberty interest no matter what 'part an inmate's behavior may play in a decision to transfer.' "); *Jackson v. New York Dep't of Correctional Servs.,* 994 F.Supp. 219, 223–24, 1998 WL 59060 at *4 (S.D.N.Y.1998) ("[T]here is no constitutional right to be free from inter-prison transfers. It is well established that state prisoners have no liberty interest in remaining at a certain facility ... and the due process clause is therefore not implicated by a transfer."); *Davis v. City of New York,* 96 Civ. 2998, 1998 WL 29247 at *3 (S.D.N.Y. Jan.26, 1998) ("transferring [plaintiff prisoner] did not violate his rights"); *Allen v. Coughlin,* 93 Civ. 5606, 1996 WL 164663 at *1 (S.D.N.Y. April 9, 1996) ("New York inmates have no liberty interest in remaining in any one particular facility in the DOCS system").

Since inmate Joe Jackson has no constitutional right to remain at a particular prison, it obviously follows that an inmate's spouse,

---

**12.** According to Ercole, Jackson's "1996 transfer was authorized and processed by Fishkill's Deputy Superintendent of Programs Ada Perez, Senior Corrections Counselor Barbara Simmons, and Correction Counselor Fedele Fiore." (Ercole Aff. ¶ 4.)

here Ruby Jackson, does not have a constitutional right to have her inmate husband remain in a facility close to her residence. *See, e.g., Davis v. Carlson,* 837 F.2d 1318, 1319 (5th Cir.1988) (the court has "no power to [transfer the prisoner to a prison near plaintiff wife's residence], there being no clear duty—nor, indeed, any duty—on the part of the Bureau [of Prisons] to do that"); *Garrett v. Angelone,* 940 F.Supp. 933, 944 (W.D.Va. 1996) ("neither inmates nor their potential visitors have any constitutional right to visitation"), *aff'd,* 107 F.3d 865 (4th Cir.1997); *Walters v. United States,* No. Civ. A. 94–1801, 1995 WL 144657 at *1 (E.D.Pa. March 14, 1995) (prisoner's wife's claims dismissed because she "has no constitutional rights that could have been violated.... She herself has no right to visitation or telephone contact with her inmate husband").

Moreover, as noted above, plaintiffs have not presented any evidence that the named defendants had any involvement in Jackson's transfer to another prison.

Accordingly, defendants should be granted summary judgment dismissing Ruby Jackson's claims.

### CONCLUSION

For the reasons set forth above, the Court recommends that defendants' summary judgment motion be granted.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435

(1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), cert. denied, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).